268 So.2d 850

**Glenn DIAMOND**

v.

**STATE.**

**1 Div. 198.**

Court of Criminal Appeals of Alabama.

Oct. 17, 1972.

John L. Lawler, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Glenn Diamond was tried and convicted of robbery by a Mobile Circuit Court and sentenced to ten years.

An appeal was taken from this judgment, and the first error assigned was the long delay in bringing the case to trial.

The record contained an affidavit dated December 14, 1970, and showed the following facts:

"February 27, 1967, Glenn Diamond was arrested for the crime of robbery. He was indicted, and on May 16, 1967, waived arraignment and pleaded not guilty. His trial was set for September 18, 1967, and on August 29, 1967, reset for September 8, 1967, to notify the defendant.

"On September 8, 1967, Glenn Diamond did not appear in court, and an alias writ of arrest was issued.

"On September 18, 1967, the court was notified that the defendant was in jail in New York City, bond was set at $25,000.00, and the case was passed generally.

"This affiant also stated that in the Circuit Court file, there was a letter from the appellant inquiring into the status of the case, and asking whether or not the case would be tried or dismissed.

"Except for hearings on nisi forfeitures, the docket sheet did not indicate any action on this case until October 22, 1970, when it was set for trial on February 3, 1971."

On December 15, 1970, appellant's attorney filed a motion to dismiss, complaining of non-action by the State from September 18, 1967, until October 22, 1970, and it is this delay that supports the appellant's contention that he was denied his constitutional right to a speedy trial.

The right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment, and is enforceable against the States by virtue of the Fourteenth Amendment. U.S.C.A.Const. Amends. 6, 14. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

On September 8, 1967, this appellant was to have appeared for trial in Mobile Circuit Court on the charge of robbery. Upon his failure to appear, the court issued an alias writ. The affidavit showed that on the trial date, appellant was in jail in New York City.

With the exception of the motion to dismiss filed December 15, 1970, appellant at

no time demanded a speedy trial or objected to a delay, and the general rule on this question in Alabama is as stated in Washington v. State, 45 Ala.App. 173, 227 So.2d 805, and later in Moulden v. State, 47 Ala. App. 573, 258 So.2d 915:

> "a demand for a trial or objection to postponement of trial, or some other effort to secure a speedy trial on the part of the accused, ordinarily must be affirmatively shown to entitle him to a discharge on the ground of delay."

A majority of the states have adopted a rule requiring the appellant to demand a trial or resist postponement, and the federal decisions clearly establish that the right to a speedy trial is the defendant's personal right, and is deemed waived if not promptly asserted. United States v. Lustman, 2d Cir., 258 F.2d 475; United States v. Evans, 5th Cir., 436 F.2d 1305.

■ If appellant had desired an earlier trial date, he could have voiced such request in his letter of inquiry to the court on October 28, 1968. The record before this court supports the determination that appellant made no objection to the postponement, and in fact, acquiesced in the delay. It was his own action of leaving the state before trial which caused his complaint, and it was his lack of action that sustained it.

The appellant contends that the trial court erred in failing to inquire as to the competency of the complaining witness, Everett Gay Cooper, based on the following testimony:

By Mr. Sullivan (Defense Attorney)

"Q. Mr. Cooper, were you intoxicated that night?

"A. No sir.

"Q. Are you intoxicated today?

"A. No sir. I had one drink because I had a toothache."

■ We feel that the appellant waived his right to complain of the "testimonial qualifications" of the complaining witness by his failure to object to the witness's competency. Counsel should have asked the court to inquire into the competency of the witness or ask that he be allowed to question him on voir dire. Segrest v. State, 44 Ala.App. 673, 219 So.2d 890.

■ The admission of testimony of an allegedly intoxicated witness was not error since the weight to be accorded to the testimony is for the jury to say. Anderson v. State, 30 Ala.App. 124, 2 So.2d 461, writ denied 241 Ala. 381, 2 So.2d 463.

The witness in the instant case was not shown to be drunk or so influenced by drink that he could not testify. His testimony was not objected to by defense counsel nor did he ask that it be excluded. We are of the opinion that the competency of the witness was not affected by the prior drinking, and the judge who saw and heard him, committed no error in allowing him to testify.

■ While the right to cross examination belongs to every party as to all witnesses called to testify against him, the scope and extent of cross examination rests in the sound discretion of the trial court, and such discretion will not be disturbed on appeal unless shown to be grossly abused. McCain v. State, 46 Ala.App. 627, 247 So.2d 383.

The court below allowed the appellant's attorney to question the complaining witness concerning a conviction for disorderly conduct, but prohibited counsel from making inquiry as to the offenses of vagrancy and driving while intoxicated.

The Code of Alabama 1940, Recompiled 1958, Title 7 § 434 and § 435, permit examination of witnesses concerning conviction of crimes involving moral turpitude for purposes of attacking their credibility as a witness. Love v. State, 36 Ala.App. 693, 63 So.2d 285.

"Moral turpitude signifies an inherent quality of baseness, vileness, depravity." Gillman v. State, 165 Ala. 135, 51 So. 722.

■ The court below was correct when it did not allow defense counsel to question the witness concerning the offense of vagrancy. In order for this to be permissible, it is necessary to show that the act characterized as vagrancy under the law would have been such an act as involved moral turpitude. Bryan v. State, 18 Ala.App. 199, 89 So. 894.

■ Further, the court below prohibited questioning of the witness concerning the offense of driving while intoxicated. It is our holding that this is not the kind of offense which signifies an inherent quality of baseness, vileness, and depravity, denoting moral turpitude. If distilling or otherwise violating the prohibition laws does not involve moral turpitude, Lakey v. State, 206 Ala. 180, 89 So. 605, nor public drunkenness, Grammer v. State, 239 Ala. 633, 196 So. 268, nor bootlegging, Wiggins v. State, 27 Ala.App. 451, 173 So. 890, then we feel that the operation of an automobile while intoxicated does not constitute an offense involving moral turpitude. The trial judge did not abuse the court's discretion in disallowing the foregoing inquiries.

During the cross examination of Detective Hubert Bell, one of the officers who investigated the robbery, defense counsel asked:

"Q. Alright now, let me ask you this, Detective Bell,—at the time you conducted that line-up, did you see that this boy had a lawyer present to see that it was conducted fairly?

Mr. Sims: (District Attorney)

"I object, Your Honor, it's immaterial at this stage of the trial. It was in 1967, and at this time Mr. Sullivan himself has brought out the line-up and asked was it fair,—so it is immaterial to this case."

The court's action in sustaining this objection is the basis of appellant's contention that it was error for the court to refuse to allow him to inquire about the facts and surrounding circumstances of the pre-trial line-up.

Counsel cites from Moody v. State, 267 Ala. 204, 100 So.2d 733, in support of his argument that wide latitude must be allowed in cross examination to insure the development of all facts. The circumstances of that case, however, are distinguishable, in that the mental condition of defendant was in question, and the court, following the "wide latitude" rule, quoted from Barbour v. State, 262 Ala. 297, 78 So.2d 328, as follows:

"'It has long been held that "wide latitude" is allowed both the defendant and the state in inquiries into a person's mental state when an issue as to the sanity of such person is presented.'"

In reference to this contention, we feel it should be noted that while we are not confronted with the rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, by virtue of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the in-court identification of appellant was based on confrontations other than the line-up. The victim had ample opportunity to view the appellant at close range, and his in-court identification was based on his observations at the time of the alleged crime.

■ Granted that cross examination may be broad in scope, the court's refusal to permit further questioning of Detective Bell as to the line-up was solely within the court's discretion, and resulted in no prejudice to appellant. McCain v. State, supra.

Appellant's final complaint is that the trial court erred in refusing to grant his motion for a mistrial because of the comment made by the District Attorney on appellant's failure to testify.

This complaint originates from the cross examination of Detective Bell by defense counsel, wherein the following occurred:

"Q. You talked to the defendant in regard to this case, didn't you?

"A. Yes sir.

"Q. And didn't he tell you he wasn't involved in it?

"MR. SIMS: I object, Your Honor, that's immaterial,—he can take the witness stand, if he wants to.

"MR. SULLIVAN: Now, Judge, I object to that and move for a mistrial.

"THE COURT: Overrule the objection.

"MR. SIMS: We except.

"MR. SULLIVAN: Judge, I move for a mistrial on the remark of the State's attorney.

"THE COURT: I did not hear the remark.

"MR. SULLIVAN: He said that this man could take the stand if he wanted to deny it.

"MR. SIMS: That's testifying, Your Honor, when he asks him what he said, —that's indirectly testifying.

"MR. SULLIVAN: I'm objecting to what you said.

"THE COURT: The court thought that the reference was to the Attorney, that you could testify. Motion denied.

"Q. Did he tell you he didn't have anything to do with it?

"A. Yes sir."

"The facts and circumstances of each case must be carefully analyzed to determine 'whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" McKissick v. United States, 6th Cir., 379 F.2d 754.

■ The remark by the District Attorney was not one that the jury would understand to be a comment on the appellant's failure to testify. It is the directing of the minds of the jurors to the fact that a defendant *has failed* to testify that the harm is done. This was an incident of the trial and not intended and could not be construed by the jury as criticizing or commenting upon the defendant's subsequent failure to testify. While we do not approve of the remark, we do not think it is equivalent to a comment or a reference prejudicial to appellant.

Code of Alabama 1940, Recompiled 1958, Title 15, Section 305, expressly forbids any comment or any reference to the failure of the defendant to testify. It is improper for the prosecuting attorney to make a comment, remark, or reference in his argument that will either directly or indirectly attract jury's attention to the fact that defendant *has not* testified.

The comment in question was made during cross examination and not during argument, consequently, it should not be construed as a remark on defendant's subsequent failure to testify.

The result in this case is the same as that reached in each of the following cases, where it was held that the remark of the prosecuting attorney was not error:

"In Washington v. State, 259 Ala. 104, 65 So.2d 704, the remark, in a nighttime burglary case, was: 'They caught him, and they caught him in the house, and they are to be commended for it, and he hasn't gotten up here and offered you any explanation of what he was doing in that house.' We held 'the reference was not to the defendant's failure to testify, but to his attorney, who had just argued the defense.'" Taylor v. State, 279 Ala. 390, 185 So.2d 414.

In Taylor v. State, supra, the Supreme Court of Alabama held that neither prosecuting attorney's statement, "At this time, gentlemen, I think you believe what (state's witness) said is true, you haven't heard anyone say here that it wasn't ex-

**74**

cept the attorney who was representing the defendant" nor statement, "Gentlemen, are you going to let the man say or let the attorney say, 'I am not guilty of this crime,'" amounted to impermissible comment upon defendant's failure to testify.

In King v. State, 45 Ala.App. 348, 230 So.2d 538, the statement in prosecutor's closing argument in reference to testimony by defense witness that defendant had bitten arresting officer on previous occasion "Now, if that man had bit him, don't you know this man would have told you so?" was not held to be an improper comment on defendant's failure to testify.

In view of the foregoing, it is our belief that counsel's comment during the cross examination did not constitute reversible error, and the judgment of the lower court is hereby due to be affirmed.

Affirmed.

CATES, P. J., and ALMON, TYSON and HARRIS, JJ., concur.