Kathy D. HOUSE, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT I–29 OF MUSKOGEE COUNTY, Appellee.

No. 84264.

Supreme Court of Oklahoma.

April 1, 1997.

Teddy J. Abbott, Muskogee, for Appellant.

John G. Moyer, Jr., Mark S. Rains, Rosenstein, Fist & Ringold, Tulsa, for Appellee.

SIMMS, Justice.

In this appeal we are asked to interpret for the first time statutory procedures governing the dismissal of career teachers in Oklahoma. The facts are these. Kathy D. House ("teacher") was a career teacher at an elementary school in Independent School District 1–29, Muskogee County ("school"). An evaluation by the school's principal in November of 1993 placed the teacher on notice regarding several problems, *e.g.*, student not kept "on task," inequitable treatment of students, and rule violations pertaining to hall passes. The teacher's poor performance nonetheless continued, and, by January of 1994, parents and students had complained to the principal regarding, among other things, the teacher's lack of control in the classroom and her recommending medication for students.

On January 7 the principal issued a "plan for improvement" (which includes an admonition) to the teacher pursuant to the Teacher Due Process Act of 1990, 70 O.S.Supp.1992 § 6–101.24, which provides:

A. **When an administrator who has carried out an evaluation of a teacher** as specified by Sections 71 and 72 of this act [or §§ 6–101.10 and 6–101.11] **identifies poor performance or conduct that the administrator believes may lead to a recommendation for the teacher's dismissal or nonreemployment, the administrator shall:**

1. Admonish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct; and

2. **Establish a reasonable time for improvement, not to exceed two (2) months,** taking into consideration the nature and gravity of the teacher's performance or conduct.

B. **If the teacher does not correct the poor performance or conduct cited in the admonition within the time specified, the administrator shall make a recommendation to the superintendent of the school district for the dismissal or nonreemployment of the teacher.**

\*      \*      \*      \*      \*      \*

D. Repeated negligence in performance of duty, willful neglect of duty, incompetency, instructional ineffectiveness or unsatisfactory teaching performance, for a career teacher, or any cause related to inadequate teaching performance for a probationary teacher, shall not be a basis for a recommendation to dismiss or not reemploy a teacher **unless and until the provisions of this section have been complied with.** (Emphasis added.)

On February 2, 1994 the principal issued a three-part plan for improvement and again discussed the problem areas with the teacher. Those areas included the need to properly monitor students' progress and to become a better role model through better control of the class. The plan also gave written notice to the teacher that "[f]ailure to make reasonable long-term efforts to meet these objectives may result in non-renewal of contract."

On March 8, 1994 the principal evaluated the teacher and found unsatisfactory performance in several areas and little, if any, improvement as prescribed by the plan. Cognizant that the statutory automatic contract renewal date, April 10, was approaching, the school renewed the teacher's contract in March, giving her the continued opportunity to improve. See 70 O.S.1991 § 6–101(E), which provides:

E. A board of education shall have authority to enter into written contracts with teachers for the ensuing fiscal year prior to the beginning of such year. **If, prior to April 10, a board of education has not entered into a written contract with a regularly employed teacher or notified the teacher in writing by registered or certified mail that a recommendation has been made not to reemploy the teacher for the ensuing fiscal year, and if, by April 25, such teacher has not notified the board of education in writing by registered or certified mail that such teacher does not desire to be reemployed in such school district for the ensuing year, such teacher shall be considered as employed on a continuing contract basis and on the same salary schedule used for other teachers in the school district for the ensuing fiscal year,** and such employment and continuing contract shall be binding on the teacher and on the school district. (Emphasis added.)

Following the March 8 evaluation, no classes were held during a two-week spring break, and the teacher was absent for another two weeks due to illness. She did not resume teaching until April 4. There is evidence that the substitute teacher was able to gain control of the teacher's class within one or two days. Upon the teacher's return, her classroom problems worsened. The record is replete with instances of unprofessional behavior on the part of the teacher. Also, the district court found that she had falsified disciplinary reports by stating on them that she had attempted to contact the parents of each affected student. The evidence showed that she had not.

On April 22 the principal again observed the teacher in class. She witnessed poor performance and a failure to fulfill the plan's objectives. A few days later another administrator conducted an independent evaluation of the class. He observed several of the problems that existed when the plan was first issued. On May 3, 1994 the superintendent suspended the teacher with full pay and benefits. On his recommendation that the teacher be dismissed, the Board of Education held a hearing on June 16. Later, by a unanimous vote, the teacher's employment was terminated. She then petitioned the district court for a trial *de novo*, which was held in accordance with § 6–101.27(D).

The trial judge found ample evidence supporting several of the statutory grounds for dismissal, namely willful neglect of duty, unsatisfactory teaching performance, and moral turpitude, the latter of which stems from the falsified disciplinary reports. See 70 O.S. 1991 § 6–101.22(A):

A. Subject to the provisions of the Teacher Due Process Act of 1990, a career teacher may be dismissed or not reemployed for:

1. Willful neglect of duty;

2. Repeated negligence in performance of duty;

3. Mental or physical abuse to a child;

4. Incompetency;

5. Instructional ineffectiveness;

6. Unsatisfactory teaching performance; or

7. Any reason involving moral turpitude.

Regarding the procedural aspects of the teacher's dismissal as prescribed by statute, the court found that she had been given adequate notice of, as well as reasonable time to correct, the deficiencies, and that the administration had made reasonable efforts to assist her.

The teacher appealed, arguing that the school failed to make a reasonable effort to assist her and that a reasonable time for improvement should have been specified in

advance.[1] The district court's findings regarding the sufficiency of the evidence supporting the dismissal were thus left unchallenged. The Court of Appeals reversed and directed the school to reinstate the teacher with full employment status and benefits. We granted certiorari on the school's petition alone.

### I.

■ In the teacher's first argument she complains specifically that (1) the principal was the only administrator who provided any assistance and (2) a reasonable effort to assist necessarily includes giving a teacher a copy of all the school's rules. Neither argument has merit. On the issue of assistance from the administration the teacher does not question the adequacy of the efforts made by the principal in this case. Neither does the teacher explain how anybody, other than herself, could have made any difference in her ability to meet the objectives of the plan for improvement.

■ With respect to the school's rules, the teacher does not contend that they were *unavailable* to her, only that they were not given to her as part of the statutorily required "assistance." Testimony indicates that the teacher did not ask the principal for a set of the school's policies and rules until the end of April. Although the principal did not then give her a copy, stating that "everybody" has one, this response *alone* manifests no statutory violation or denial of due process. Moreover, there is evidence that the teacher was aware of the school's rules and policies, and no showing is made to indicate she has been prejudiced by the lack of any

information. The teacher offers nothing to establish that she was prevented or inhibited from fulfilling the plan for improvement because she was without a full set of the elementary school's rules and regulations.

### II.

■ The teacher's contention regarding the school's failure to establish a reasonable time for improvement is based on specific language in two paragraphs of § 6–101.24. The administrator who issues a plan for improvement is required by subsection (A)(2) to *"[e]stablish a reasonable time* for improvement, not to exceed two (2) months, taking into consideration the nature and gravity of the teacher's performance or conduct." (Emphasis added.) Subsection (B) requires the administrator to make a recommendation to the superintendent "[i]f the teacher does not correct the poor performance or conduct cited in the admonition *within the time specified....*" (Emphasis added.)

There is no question that the principal failed to specify a reasonable time. The school nonetheless maintains that legislative intent is primarily (a) to ensure that teachers have a reasonable opportunity to correct poor performance or conduct and (b) to prevent those affected by a teacher under a plan for improvement from being subjected to prolonged substandard teaching. The school urges that the statute's purpose was more than fulfilled in this case and that technical noncompliance should not be a basis for reinstating this teacher. We agree for two reasons.

---

**1.** The teacher stated four propositions in her brief in chief:

(1) The trial court's finding that appellee made a reasonable effort to assist appellant in correcting the poor performance or conduct was not supported by the evidence;

(2) The trial court's finding that appellee established a reasonable time for improvement was clearly against the weight of the evidence;

(3) The trial court's finding that 70 O.S. § 6–101.24(A)(2) does not require appellee to establish a reasonable time for improvement not exceeding two (2) months is contrary to the law;

(4) The trial court erred in denying appellant's motion for a directed verdict at the conclusion of appellee's case in chief.

The third proposition is based on the notion that the absence of a specific time from the plan is a "deficiency in the procedure." The fourth proposition is based on "the same arguments concerning the statutory requirements." We therefore view both the third and fourth arguments as comprised within the first two, which are discussed in parts I and II of this opinion. The first and second arguments place in question the school's compliance with applicable statutes. None of the teacher's arguments calls for this court's review of the various grounds upon which she was dismissed from employment.

First, the teacher offers nothing to indicate how she might have been prejudiced by the principal's omission. Instead, the teacher focuses *solely* on the failure to include in the plan a specific amount of time. The explicit statutory requirement that plans for improvement include a specific yet reasonable time (not exceeding two months) within which the poor performance or conduct must be corrected is a mere technical requirement, where, as in this case, a teacher has been given more time than the statutory maximum and has thereby benefitted from the non-compliance. See *Krischer v. School Board of Dade County,* 555 So.2d 436, 437 (Fla.App. 3rd Dist.1990), where a technical violation of the statutory notice requirement was deemed harmless in the absence of prejudice to the teacher; *Rickel v. Cloverleaf Local School District Bd. of Ed.,* 79 Ohio App.3d 810, 608 N.E.2d 767, 771 (1992), where failure timely to notify a teacher of the board's decision was a mere procedural violation, insufficient to warrant reversal in the absence of harm from the delay; *Childs v. Roane County Board of Education,* 929 S.W.2d 364, 367 (Tenn.App.1996), where failure of superintendent to give the required written warning was harmless error, because the teacher suffered no prejudice and had been given "abundant notice."

Our conclusion may have been different if, for example, the principal had sought the teacher's dismissal after only a few days without having specified in the plan a reasonable time to correct the problem. In such a case the failure to comply with the statute would constitute more than a mere technical violation. The statutorily required specification does provide a teacher with some assurance that a reasonable time will be given. It also gives a teacher a time frame within which to achieve the objectives and avoids unexpected or premature decisions by administrators. The teacher here neither argues nor directs our attention to anything in the record to show that she was adversely affected by the principal's omission.

The second reason for rejecting the teacher's argument is that the provision requiring compliance with § 6–101.24 *does not apply to dismissals based on moral turpitude.* Sub-

section (D) of § 6–101.24 lists only five of the seven grounds for dismissal or nonreemployment enumerated in § 6–101.22(A), *supra.* Compliance with § 6–101.24 is not required for dismissals for "any reason involving moral turpitude" or for "mental or physical abuse to a child." Inasmuch as the teacher does not challenge the district court's finding with respect to moral turpitude, we hold that the school need not have complied with each of the specific requirements of § 6–101.24.

THE COURT OF APPEALS' OPINION IS VACATED, AND THE DISTRICT COURT'S ORDER SUSTAINING THE TEACHER'S DISMISSAL IS AFFIRMED.

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, and WATT, JJ., concur.

ALMA WILSON, J., concurs in judgment.