2002 OK CIV APP 97

**Donna HILL, Plaintiff/Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 25 OF ADAIR COUNTY, Oklahoma, a.k.a. Stilwell Public Schools, and Floyd Cox, Jr., Betty Barker, Hiram McFarland, Mary Stilwell, Mike Pinkerton, and Gerald Whit, in their official capacity as members of the Board of Education of Independent Schools District No. 25 of Adair County, Oklahoma, a.k.a. Stilwell Public Schools, Defendants/Appellees.**

**No. 96,306.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 6, 2002.

As Corrected Nov. 5, 2002.

Todd Hembree, Stilwell, for Plaintiff/Appellant.

J. Douglas Mann, Jerry A. Richardson, Tulsa, Lloyd E. Cole, Stilwell, for Defendants/Appellees.

MITCHELL, J.

¶ 1 After a due process hearing, Appellee, Stilwell School District, dismissed a career teacher, Appellant, Donna Hill, who served as a certified high-school guidance counselor, on the grounds of moral turpitude and willful neglect of duty. Following the hearing, Hill filed a petition in the district court for a trial *de novo*. Finding Hill had falsified certain entries on the transcripts of several students, including that of her own daughter, and that such acts constituted willful neglect of duty and moral turpitude, the trial court sustained School District's decision to dismiss Hill. We affirm.

*Factual and Procedural Background*

¶ 2 Acting upon teacher concerns about favoritism, the new Superintendent of the Stilwell School District, Dr. W. Neil Morton, appointed a faculty committee to investigate the integrity of academic records at Stilwell High School. One of the projects the committee undertook was to compare student transcripts with the final marks in teachers' grade books. Recording students' grades was apparently one of Hill's responsibilities as counselor.

¶ 3 The committee discovered one instance of a student's final grade being changed from an "F" to a "D-" in a required Senior English course; without this grade change, the student would not have been eligible to graduate. The committee also found that Hill posted a grade on another student's transcript for an Advanced Sociology course, a class not offered at Stilwell High School. Although Leon Hill, principal of Stilwell High School and husband of Appellant, Donna Hill, was the purported teacher of this class, the committee could find no evidence to show such a course had ever been taught at the school.

¶ 4 The committee further discovered that Hill had favored her daughter, a student at Stilwell High School, in connection with her daughter's switch from a chemistry class to a home economics class eleven weeks into the eighteen week semester. Hill's daughter received a final grade of "A" in the home economics class even though her chemistry grade, a "C-," should have been averaged with her home economics grade, making a final score of "A" a mathematical impossibility. Hill also changed her daughter's transcript to reflect that she had taken two nonexistent courses. During the 1998–99 school year, Hill's daughter took the same home economics class, Food & Nutrition, two periods in a row in the fall and then signed up for back-to-back Clothing classes in the spring. Hill altered her daughter's official transcript to show that her daughter had taken two different classes: Food & Nutrition I and Food & Nutrition II in the first semester, and Clothing I and Clothing II in the second. Food & Nutrition II and Clothing II are not offered at Stilwell High School. Finally, Hill failed to assign credit points on her daughter's transcript for a particular class, thereby artificially enhancing her daughter's overall grade point average.[1]

---

1. At Stilwell High School each class is worth .5 credits per semester. Letter grades are assigned a numerical value, and a student's grade point average is determined by dividing the total numerical value of the grades earned by the number of course "credits". A student who receives a grade in a class but no "credit" for that class will have an advantage over her classmates in calculating grade point average, because the student's total numerical grade will be divided by a

¶ 5 The committee notified Superintendent Morton of these findings in two separate reports concerning the integrity of student records at the school. On October 30, 2000, the superintendent notified Hill that he had made a recommendation to the Board of Education that she be dismissed from her employment for willful neglect of duty. Hill's due process hearing was originally scheduled for November 9, 2000, but was subsequently passed to January 10, 2001, to accommodate the holiday travel plans of Hill's counsel who had recently experienced a death in the family. Prior to November 9, 2000, School District provided Hill's counsel with copies of the committee's reports, which detail the facts set forth above upon which the superintendent based his dismissal recommendation. On December 29, 2000, Superintendent Morton notified Hill through her attorney that he was amending the notice of termination to include the additional statutory ground for dismissal of moral turpitude. 70 O.S.2001 § 6–101.22(A).

¶ 6 When the Board of Education convened on January 10, 2001, Hill's counsel objected to holding the due process hearing that day, arguing that Hill had not received the statutory minimum of twenty days in which to prepare a defense to the newly-added moral turpitude charge. The school board agreed to postpone the hearing until January 30, 2001, more than thirty days after Hill received notice of the additional ground for dismissal. At the conclusion of January 30th due process hearing, the Board voted to dismiss Hill from her employment with the Stilwell School District.

¶ 7 Hill petitioned the District Court of Adair County for a trial de novo pursuant to 70 O.S.2001 § 6–101.27. After a briefing cycle, the trial court heard oral arguments at which Hill's attorney declared that he and his client "stand on the transcript of the due process hearing." In an order dated May 9, 2001, the trial court affirmed the Board's decision to dismiss Hill.

*Standard of Review*

 ¶ 8 "Because the Teachers Due Process Act statutorily modifies the common law at-will employment doctrine, we review the findings of fact of the trial court as if it were a law action tried to the court and give those findings of fact the same great deference we give those rendered by a jury." *Andrews v. Independent Sch. Dist. No. 57,* 2000 OK CIV APP 103, ¶ 3, 12 P.3d 491, 493; *see also Hawzipta v. Independent Sch. Dist. No. I–004 of Noble County,* 2000 OK CIV APP 113, ¶ 10, 13 P.3d 98, 100–01. "We do not reweigh the trial court's findings of evidentiary matters.... Even though the evidence may conflict, the appellate court is bound by the fact finder's assessment of it, absent legal error. A verdict which is supported by conflicting but competent evidence will not be disturbed on appeal." *Hawzipta,* ¶ 10, 13 P.3d at 101, citing *Mitchell v. Ford Motor Credit Co.,* 1984 OK 18, 688 P.2d 42.

*Analysis and Review*

¶ 9 Hill asserts the Stilwell School District violated the Teacher Due Process Act, 70 O.S.2001 § 6–101.20 *et seq.* by: (1) failing to give her proper notice of the factual basis for its termination recommendation; (2) failing to admonish her and/or provide a reasonable amount of time for her to improve; (3) failing to give her sufficient time to respond to the charge of moral turpitude; and, (4) denying her a fair due process hearing by allowing testimony regarding certain facts pertaining to her husband's alleged misconduct during her hearing and by permitting the Superintendent's attorney to be present during the school board's deliberations. Hill further claims the evidence presented fails to support a charge of moral turpitude.[2] In sum, Hill raises several technical due process challenges to the school board's decision and, secondarily, challenges the sufficiency of evidence supporting a finding a moral turpitude.

¶ 10 Article VI of Oklahoma's School Code defines a "teacher" as "a duly certified or licensed person who is employed to serve as a counselor, librarian or school nurse or in

---

smaller number of earned credits, thus generating a higher grade point average.

2. Hill does not challenge the sufficiency of evidence supporting the board and trial court's conclusion that she willfully neglected her duties.

any instructional capacity." 70 O.S.2001 § 6–101.3. Dismissal is "the discontinuance of the teaching service of an administrator or teacher during the term of a written contract," whereas nonreemployment is "the nonrenewal of an administrator's or teacher's contract upon expiration of the contract." *Id.* Subsection 6–101.22 of The Teacher Due Process Act of 1990 lists willful neglect of duty and moral turpitude as two of seven grounds for dismissal or nonreemployment.

¶ 11 Subsection 6–101.26(A) of the Teacher Due Process Act provides when a superintendent recommends the dismissal of a teacher, the board of education must mail a copy of the recommendation to the teacher, specifying the statutory grounds and underlying facts supporting the recommendation, and notifying the teacher of her right to a hearing before the board. In addition, the hearing must take place no sooner than twenty days or later than sixty days after the teacher's receipt of the notice. 70 O.S.2001 § 6–101.26(A).

¶ 12 The notice Hill received in October, 2000, stated the recommendation for her dismissal was "based upon underlying facts in that you have willfully neglected your contractual and professional duties and responsibilities in dispensation and publication of student grades." [3] Within ten days of the notice, Hill's attorney received copies of the faculty committee's two reports on the integrity of student records at the school, which set forth in detail the specific instances of transcript alterations for which Hill was allegedly responsible.

¶ 13 While Hill claims that these communications were not specific enough to comply with 70 O.S.2001 § 6–101.26(A), she fails to allege how she was in any way prejudiced thereby. To the contrary, the notice, with the reports that followed several days later were very specific. Hill's attorney had ample opportunity to interview whomever he wanted and review any and all pertinent documents in preparing his client's defense.

¶ 14 As for the subsequent moral turpitude charge, it was based on the same facts as the willful neglect of duty charge. Hill has failed to show how she was prejudiced by the lack of specificity in the notice of the additional charge. The moral turpitude charge did not require any further discovery. Even if it had, the school board agreed to postpone the hearing date from January 10, 2001, to January 30, 2001, thereby providing Hill with more time than the twenty-day statutory minimum during which to prepare her defense. Without evidence of prejudice, these facts simply do not support Hill's claim that the Stilwell School District violated the Teacher Due Process Act by failing to supply her with adequate notice of the underlying facts or give her sufficient time in which to prepare her defense. [4]

¶ 15 Hill next claims Stilwell School District violated subsection 6–101.24(D) of the Teacher Due Process Act by failing to admonish her and give her time for improvement prior to recommending her dismissal. The Act provides that school administrators who identify the sort of poor performance on the part of a teacher that could lead to a termination recommendation for willful neglect of duty shall "[a]dmonish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct" and "[e]stablish a reasonable time for improvement, not to exceed two (2) months, taking into consideration the nature and gravity of the teacher's performance or conduct." 70 O.S.2001 § 6–101.24(A). "The purposes of the admonishment statute are to prevent arbitrary and unreasonable teacher evaluations by principals and to provide assistance for teachers with remedia[ble] classroom problems." *Jackson v. Independent Sch. Dist. No. 16 of*

---

3. The Supreme Court has defined willful neglect of duty as "a 'knowingly and purposeful' violation" of a teacher's duties. *Childers v. Independent Sch. Dist. No. 1 of Bryan County,* 1981 OK 123, ¶ 19, 645 P.2d 992, 996.

4. To the extent Hill objects that the January 10th or 30th due process hearings violate subsection 6–101.26(A) of the Teacher Due Process Act be-

cause they occurred more than sixty days after Hill's receipt of the October 30, 2000 willful neglect of duty charge, such objection is waived. The board scheduled the hearing for January 10, 2001 to accommodate the schedule of Hill's attorney. It would thus be disingenuous at best for Hill to attempt to rely on the delayed hearing date as a basis for appeal.

*Payne County, Okla.,* 1982 OK 74, ¶ 4, 648 P.2d 26, 29.

¶ 16 It is well-settled that career teachers who are found to have committed acts demonstrating moral turpitude are *not* entitled to the admonishment and reasonable time for improvement provided for in 70 O.S.2001 § 6–101.24. *House v. Independent Sch. Dist. I–29 of Muskogee County,* 1997 OK 35, ¶ 16, 939 P.2d 1127, 1131 (noting that moral turpitude is not one of the five grounds for dismissal listed in the admonishment statute). While teachers who have *remediable* teaching performance problems that could result in dismissal for willful neglect of duty are entitled to admonishment, those whose dismissals are based on specific, *irremediable* instances of misconduct are not. *See Harjo v. Board of Ed. of Ind. Sch. Dist. No. 7,* 1999 OK CIV APP 35, 976 P.2d 1096 (a probationary teacher who was terminated for misconduct including altercations with parents, breach of student confidentiality, use of profane, sexist language, and intimidation of both faculty and students was not entitled to an admonishment and time for improvement because his dismissal was based on misconduct, not teaching problems). Although the *Harjo* case involved a probationary teacher, the reasoning applies to career teachers as well.

¶ 17 Given that Hill served as a guidance counselor at Stilwell High School, her dismissal was not based on teaching deficiencies or other remediable classroom problems. Rather, it was supported by discrete instances of misconduct, namely, altering students' transcripts. Hill's acts exhibited dishonesty, a lack of respect for the sanctity of school records, and a tendency toward favoritism.

¶ 18 The Supreme Court has recognized "the nature of the problems may well have a definite bearing on what can reasonably be expected from the administration in the way of assistance," and that certain problems do not "lend themselves to assistance or to a program for improvement." *Childers v. Independent Sch. Dist. No. 1 of Bryan County,* 1981 OK 123, ¶ 14, 645 P.2d 992, 995. It is doubtful that dishonesty and favoritism are the type of performance deficiencies the legislature envisioned in drafting the admonishment statute. Furthermore, where a career teacher's misconduct qualifies both as willful neglect of duty (which typically requires admonishment) and as moral turpitude (which does not), it was surely not the intention of the legislature to hamper a school's ability to dismiss a deceitful teacher by forcing it first to go through the pointless act of admonishment and assistance toward improvement.[5] For these reasons, Hill's claim that the Stilwell School District violated the Teacher Due Process Act by failing to admonish her consistent with 70 O.S. § 101.24 is without merit.

¶ 19 Hill further argues the Stilwell School District denied her a fair due process hearing when it "unfairly combined [her hearing] with that of her husband who was being terminated as principal of Stilwell High School" and allegedly allowed the school board's attorney to sit in on the closed meeting in which the decision to dismiss Hill was made. First, the school board did not combine Hill's hearing with that of her husband, but held them consecutively on the same day. This schedule was the result of Hill's request to postpone the January 10, 2001 hearing so she would have more time in which to prepare her defense. Second, Hill's claim that the board allowed testimony at her hearing pertaining to her husband's alleged misconduct is insufficient to show a denial of due process. The testimony to which Hill points involved her own misdeeds and only peripherally touched on her husband. Third, Hill offers no proof whatsoever in support of her claim that the attorney for the school board sat in on its closed meeting, and no legal support for why or how such an action would be improper.

¶ 20 Finally, any due process concerns Hill may have had regarding her hearing before the school board were cured by the *de novo* review of the trial court. *See Cooper v. Williamson County Bd. of Ed.,* 746 S.W.2d 176, 183–84 (Tenn.1987) ("any arbitrariness or capriciousness on the part of

---

5. As discussed *infra,* there is ample evidence to support the finding of both the board and the trial court that Hill's actions amounted to moral turpitude. Career teachers charged with moral turpitude are not entitled to admonishment and time for improvement. *House,* ¶ 16, 939 P.2d at 1131.

board is cured by the trial *de novo* " in which the trial court "redetermines the merits of the charges and decides whether a board's actions were justified by the evidence" and "readjudicate[s] the matter in a neutral forum"). Indeed, a trial *de novo* means "trial of entire case anew, as if no action had been instituted in a court below." *Prudential Ins. Co. of America v. Prudential Life and Casualty Co.*, 1962 OK 184, ¶ 47, 377 P.2d 556, 564. Accordingly, Hill's allegations of technical violations of the Teacher Due Process Act are without merit.

¶ 21 Hill's last point of error is that there was insufficient evidence to support the charge of moral turpitude against her. "Moral turpitude broadly defined is any conduct contrary to justice, honesty, and good morals. Moral turpitude implies something immoral in itself regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute determines the moral turpitude. The elements of intent and knowledge are regarded as important, and if the wrong is unintentional or if the act is made improper by statute without regard to the mental element, it is not moral turpitude." *Kelley v. City of Tulsa*, 1977 OK 160, ¶ 5, 569 P.2d 455, 457.

¶ 22 The trial court found that Hill's falsification of student records, favoritism toward her daughter, and failure to maintain the integrity of the official student records of the Stilwell High School constitute lawful cause to dismiss Hill on moral turpitude grounds. We agree. Her conduct clearly fits the definition of moral turpitude. That conduct was also irremediable; the damage already done. Mindful of the great deference with which we review the trial court's findings of fact, and the absence of any legal error herein, we find the trial court's conclusion that Hill was properly dismissed for moral turpitude well supported by competent evidence.

¶ 23 As a final matter, we note Hill's filing of an Appendix to the Brief of the Appellant, as well as the Supreme Court's March 22, 2002 Order directing Hill to show cause why such Appendix should not be stricken pursuant to Oklahoma Supreme Court Rules, Tit. 12, Ch. 15, App. 1, Rule 1.11. Because Hill failed to respond and show cause as directed by the Supreme

Court's order, we have not considered Hill's Appendix in rendering this decision.

¶ 24 AFFIRMED.

HANSEN, P.J. and ADAMS, J., concur.